MATTHEW D. THURLOW, D.C. Bar No. 1008014
Baker & Hostetler LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 861-1681
mthurlow@bakerlaw.com

JARED S. PETTINATO, D.C. Bar No. 496901
Jared Pettinato Law Offices
3416 13th St. NW, #1
Washington, DC 20010
(406) 314-3247
Jared@JaredPettinato.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEIGHBORS AGAINST BISON SLAUGHTER (538 Old Yellowstone Trail South, Gardiner, MT 59030), and<br><br>BONNIE LYNN (538 Old Yellowstone Trail South, Gardiner, MT 59030),<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL PARK SERVICE;<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST SERVICE;<br><br>DAVID BERNHARDT, Secretary of the Interior, in his official capacity;<br><br>CAM SHOLLY, Superintendent of Yellowstone National Park, in his official capacity; and<br><br>SONNY PERDUE, Secretary of the Department of Agriculture, in his official capacity,<br><br>Defendants. | Case No.<br><br>COMPLAINT |

## INTRODUCTION

1. The National Park Service and the U.S. Forest Service (collectively, the Federal Agencies) have abandoned their duties to manage Yellowstone bison. They have endangered and continue to endanger hunters, local property owners, residents, and guests without exploring alternatives or otherwise analyzing the impacts of the government's bison hunt in Beattie Gulch, Montana. Montana has recognized that "the safety issues continue to escalate and the fear for injury or death to hunters is real." Letter from Dave Loewen, Montana Fish, Wildlife, and Parks (Montana Wildlife) Chief of Law Enforcement, et al. to Sam Sheppard, R3 Supervisor et al. (Jan. 27, 2017).

2. When grass and other food becomes scarce in the winter, some bison leave Yellowstone National Park north in search of forage. The easiest path out of Yellowstone crosses "a quarter-mile-square area at the mouth of Beattie Gulch . . . ." Letter from Montana Wildlife to Interested Person (September 2, 2018). To stop the bison from ranging deeper into cattle ranching territory, the Federal Agencies turned that area into a killing field. They encourage state-licensed and tribal hunters to slaughter bison there, as soon as the bison step foot across Yellowstone's border.

3. Hunting in Beattie Gulch has intensified until, in 2018, Montana concluded that "the density of hunters has increased beyond what [it] considers safe." *Id.* The State found it "common for 20-30 or more hunters to shoot simultaneously as groups of bison cross the [Yellowstone] boundary." *Id.* That concentrated hunting risks killing local residents, their guests, and visitors—who live and stay only yards away. Sooner or later, the government-sanctioned, bison hunt is going to kill someone.

4. Despite these risks to human life and safety, the Federal Agencies have repeatedly authorized the slaughter. Most recently, they signed the December 31, 2018, Operating Procedures for the [Interagency Bison Management Plan (IBMP)] (the 2019 Winter Plan).

5. The Park Service and Forest Service have arbitrarily and capriciously implemented several statutory obligations. The Park Service failed to consider public safety in otherwise disposing of bison under the Act of January 24, Pub. L. No. 67-395, 43 Stat. 1174, 1214 (codified at 16 U.S.C. § 36, and hereinafter "the Yellowstone Management Act Amendments").

6. The Forest Service also failed to consider impacts on property owners, neighbors, and visitors in implementing the Forest Service Organic Act of 1897, 16 U.S.C. §§ 472-482, 551, National Forest Management Act of 1976 (NFMA), 16 U.S.C. §§ 1600-1614, the Multiple-Use Sustained-Yield Act of 1960 (the MUSY Act), 16 U.S.C. §§ 528-531, and other federal land management statutes, like 16 U.S.C. §§ 521a, 55la, 553, 572(b), and 574.

7. The Federal Agencies failed to comply with the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347. Instead, they hid behind the State of Montana's analysis, although Congress assigned the Park Service control over the Yellowstone bison, 16 U.S.C. § 36, and the Federal Agencies are paying for 95 % of the management plan's costs. NEPA requires the agencies to analyze major federal actions over which they have control. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 772-73 (2004). The Federal Agencies have violated NEPA by failing to analyze all Yellowstone bison management decisions, including hunting, as a single connected action, in a single environmental impact statement. *See* 42 C.F.R. § 1508.25.

8. The Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, entitles Plaintiffs Neighbors Against Bison Slaughter and Bonnie Lynn (collectively, "Neighbors") to declaratory relief, a temporary restraining order, a preliminary injunction, a permanent injunction, and a

mandamus directing the agencies to stop the government bison hunt in Beattie Gulch until the Federal Agencies analyze bison management beyond Yellowstone's boundaries.

**JURISDICTION AND VENUE**

9. United States Code Title 28, sections 1331 and 1361, grant this Court jurisdiction over this case because the case presents a federal question and because it names United States agents and agencies as defendants.

10. The APA waives the United States' sovereign immunity and provides a private cause of action for anyone "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" 5 U.S.C. § 702; *Trudeau v. FTC*, 456 F.3d 178, 186, 188-89 (D.C. Cir. 2006).

11. The Court may issue declaratory judgment under 28 U.S.C. §§ 2201-02, commonly known as the Declaratory Judgment Act. Act of June 14, 1934, Pub. L. No. 73-343, 48 Stat. 955 (1934).

12. This Court also may issue a writ of mandamus under 28 U.S.C. §1361. That section, titled, "Action to compel an officer of the United States to perform his duty," grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

13. This Court presents an appropriate forum for this case. The U.S. Department of Interior and U.S. Department of Agriculture exercise control over management of wild bison in Yellowstone National Park and the Gallatin National Forest from their headquarters in Washington, D.C. Therefore, the United States Code approves of venue in this Court because a substantial part of the events giving rise to these claims occurred in the District of Columbia. *See* 28 U.S.C. § 1391(b)(2).

14. Moreover, several of the defendants reside in or near Washington, D.C., so United States Code Title 28, Section 1391(e) also recognizes this Court as an appropriate venue for suing the United States or any agents acting in their official capacities.

**PLAINTIFFS**

15. Bonnie Lynn owns three properties just across the road from an area of Gallatin National Forest where hunters slaughter bison in Beattie Gulch, Montana. She owns one plot of land where she parks an RV just north of Gardiner and a few hundred yards north of the boundary of Yellowstone National Park. She also owns two cabins another few hundred yards north on the Yellowstone River in a condominium complex called the Yellowstone Park Riverfront Association.

16. The government's bison hunt has stopped Ms. Lynn from renting her vacation rental cabins during the winter, lowered her property values, prevented her from using her properties for family visits, and caused her emotional trauma. Before the hunting intensified, Ms. Lynn used the cabins and properties more often during the winter. She does that less often in recent years because she fears the flying bullets will kill her or members of her family. Ms. Lynn loves photographing the bison, and she feels devastated watching the slaughter.

17. Ms. Lynn created Neighbors Against Bison Slaughter as a community organization to present a unified front to the IBMP. In Ms. Lynn's words: "We believe in hunting for subsistence and for meat. But the hunting here has stepped over the line to threaten the safety and peace of the neighborhood. The hunting creates a public safety hazard, risks the lives of the neighbors and their property, and upsets our way of life."

## DEFENDANTS

18. Congress assigned the Park Service a duty to manage Yellowstone. Congress also assigned the Park Service responsibility for managing the Yellowstone bison herd.

19. Congress assigned the United States Department of Agriculture, Forest Service, a duty to manage the National Forest System lands.

20. Dave Bernhardt serves as the Secretary of the Interior. Mr. Bernhardt oversees and directs the Department of the Interior's activities.

21. Cam Sholly serves as Superintendent of Yellowstone. Mr. Sholly oversees and directs Yellowstone's activities.

22. Sonny Perdue serves as Secretary of the Department of Agriculture. Mr. Perdue oversees and directs the Department of Agriculture's activities, and those activities include the Forest Service's activities.

## LEGAL BACKGROUND

### I. The Administrative Procedure Act

23. In the Administrative Procedure Act, Congress created a private cause of action and waived sovereign immunity for claims like these. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

24. The APA requires this Court to "compel agency action unlawfully withheld . . . ." 5 U.S.C. § 706(1).

25. The APA also directs the Court to "hold unlawful and set aside agency action, findings, and conclusions" that qualify as

> "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "short of statutory right," or

"without observance of procedure required by law."

*Id.* § 706(2)(A), (C), (D).

**II. Yellowstone Enabling Act and Amendments**

26. In 1872, Congress created Yellowstone National Park as the first national park in the world. Bison Management for the State of Montana and Yellowstone National Park Final Environmental Impact Statement (the IBMP EIS) xxx, *available at* ibmp.info/library.php. Congress designated Yellowstone a "public park or pleasuring ground for the benefit and enjoyment of the people." 16 U.S.C § 21.

27. In 1923, about fifty years after establishing Yellowstone, Congress delegated authority to the Secretary of the Interior to donate Yellowstone bison to "Federal, State, county, and municipal authorities for preserves, zoos, zoological gardens, and parks." *Id.* 36 (Yellowstone Management Act Amendments). Congress also gave the Secretary power to "sell or otherwise dispose of the surplus" Yellowstone bison. *Id.*

**III. Forest Service Management Statutes**

28. The Forest Service manages the National Forests under the Forest Service Organic Act of 1897, 16 U.S.C. §§ 472-482, 551, the MUSY Act, *id.* §§ 528-531, and NFMA, *id.* §§ 1600-1614. The Organic Act gives the Forest Service broad authority to "to regulate [the national forests'] occupancy and use." *Id.* § 551. The Forest Service's regulations authorized it to close areas for "Public health or safety." 36 C.F.R. § 261.53(e).

**IV. The National Environmental Policy Act**

29. Congress enacted NEPA to ensure federal agencies make informed decisions by considering the environmental consequences of "major Federal actions" in environmental impact statements. 42 U.S.C. §§ 4321, 4332(2)(C); 40 C.F.R. § 1500.1(c). NEPA established the Council on Environmental Quality (CEQ), and CEQ promulgated regulations to govern federal

agency NEPA compliance. 42 U.S.C. § 4342; 40 C.F.R. §§ 1500.1-1517.7; Implementation of Procedural Provisions, 43 Fed. Reg. 55,978 (Nov. 29, 1978); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 354 (1989).

30. When a major federal action may significantly affect the environment, NEPA requires the acting agency to analyze the action in an environmental assessment (EA) or in an environmental impact statement (EIS). 40 C.F.R. §§ 1501.3, 1501.4. As part of that process, NEPA requires the agency to compile a draft EIS, *id.* § 1502.9(a), and to present that draft to the public and to other agencies for notice and comment. *Id.* § 1503.1(a). After the agency evaluates and responds to the comments, it prepares a final EIS. *Id.* § 1502.9(b). This process culminates in a record of decision that explains the agency's rationale. *Id.* § 1505.2.

## FACTUAL BACKGROUND

31. The dangerous, overcrowded, and poorly regulated bison hunt in Beattie Gulch, threatens the lives of hunters, local property owners, neighbors, and visitors to the area. During the 1990s, several federal and state agencies developed a bison management plan. *See generally* IBMP EIS. They issued it in 2000. Federal IBMP Record of Decision (the IBMP ROD); Montana IBMP ROD (Dec. 22, 2000). Membership in the IBMP has expanded over the years. Now, the Interagency Bison Management Plan group includes nine agencies, tribes, and organizations. IBMP Partner Protocols 2 (Aug. 28, 2018).

32. The agencies and tribes, which include the Park Service and Forest Service, manage the Yellowstone bison herd, by committee. Each agency acts within the narrow sphere of jurisdiction it perceives. *See* Answering Br. for the Fed. Appellees 4, *Cottonwood Envtl. Law Ctr. v. Bernhardt*, *appeal docketed*, No. 19-35150 (9th Cir. Aug. 2, 2019).

33. Bison form an integral part of the Greater Yellowstone Ecosystem. IBMP FEIS vi. They may carry brucellosis, and Montana sees brucellosis as threatening the cattle industry. IBMP EIS i, 39.

34. When the agencies analyzed the environmental effects of the bison management plan, they considered some alternatives that included hunting. IBMP EIS xviii-xxii.

35. To this day, however, the Park Service and Forest Service have never analyzed the impacts of hunting on private property owners, neighbors, and visitors in a NEPA document. Specifically, they never analyzed the likelihood of stray bullets threatening homes or people or the impacts of concentrated, potentially infected bison carcasses spreading disease to people and wildlife.

36. Before the IBMP issued the 2000 ROD, the Park Service culled the bison population within Yellowstone to ensure the population did not exceed 3,000. IBMP ROD 52. Every year, the Park Service decides how many bison to slaughter as they migrate north out of Yellowstone to "meet population management and conflict resolution objectives." 2019 Winter Plan 4. The Park Service lets some of the bison continue north for hunters, quarantines some bison for research, and transfers some bison to the Assiniboine and Sioux Tribes' Fort Peck Reservation. *Id.* at 10-13.

37. When the Park Service slaughters migrating bison, it distributes the "meat, hides, and other bison parts to support tribal nutrition and culture; thereby allowing more tribal members to benefit from the healthy benefits bison provide." *Id.* at 11.

38. Some years, the Park Service has not slaughtered any bison, but some years it slaughters up to 700, 800, and even 1,200 bison just at the Stephens Creek facility. 2018 Annual Report of the [IBMP] 16-17 (Dec. 31, 2018).

39. As the agencies implemented the IBMP plan, the United States paid for it, but let Montana make most of the decisions outside of Yellowstone—even on federal land. Between 2002 and 2008, the agencies had spent over $2 million to implement the IBMP. General Accountability Office, Interagency Plan and Agencies' Management Need Improvement to Better Address Bison-Cattle Brucellosis Controversy, at PDF page 2 (Mar. 2008). Montana paid only $100,000, while the United States paid the other $1.9 million. *Id.*[1]

40. Hunting has escalated since 2000. In 2011, the Park Service and Forest Service concluded that their various changes to the bison management plan did not amount to a significant change. Mem. to Files, IBMP Agencies, Adaptive Management Adjustments to [IBMP] and [NEPA/MEPA] Documentation (Dec. 1, 2011). They also proposed additional changes. Among them, the agencies proposed increasing tribal hunting opportunities. *Id.* at 2, 5.

41. In the first year under the 2011 changes, hunters killed thirty-two more bison north of Yellowstone than they killed there in the prior seven years combined.

| Year | Total Bulls | Total Cows | Total Unknown | Total | Running Total |
|---|---|---|---|---|---|
| 2005 | 27 | 0 | 0 | 27 | 27 |
| 2006 | 18 | 1 | 26 | 45 | 72 |
| 2007 | 19 | 6 | 34 | 59 | 131 |
| 2008 | 1 | 0 | 0 | 1 | 132 |
| 2009 | 1 | 0 | 0 | 1 | 133 |
| 2010 | 2 | 0 | 5 | 7 | 140 |
| 2011 | 2 | 0 | 0 | 2 | 142 |
| 2012 | 98 | 43 | 33 | 174 | |

Bison Harvest Data, Winter 2005 - 2012.

[1] Montana has analyzed areas where bison could roam outside Yellowstone. In 2015, it designated more land west of Yellowstone for bison to roam. State of Montana Decision Notice, Year-round Habitat for Yellowstone Bison Environmental Assessment 7 (Map) (Nov. 2015).

42. The potential for 174 bison kills per season changed the character of Beattie Gulch. Hunting intensified.

43. The bison hunt evicts property owners, neighbors, and visitors to Beattie Gulch, and risks their lives.

44. The hunt has ultimately increased its danger to private property owners, neighbors, and visitors to Beattie Gulch.

45. Montana Wildlife has recognized the danger for years, but like the Park Service and the Forest Service, it has done almost nothing.

46. According to Montana, in 2015, the Forest Service had closed eighteen acres of Forest Service land to hunting for safety. Montana Wildlife, Hunting Season/Quota Change Supporting Information 2 (Sept. 19, 2019). Two years later, the Forest Service pushed hunting 200 yards further west of Old Yellowstone Trail and deeper into Beattie Gulch. *See* Custer Gallatin National Forest, Order No. 01-11-03-18-01 (Nov. 20, 2017).

47. In fall of 2018, Montana Wildlife proposed closing part of Beattie Gulch to Montana-licensed hunters because too many hunters were shooting too many bison on too small of an area. In the end, Montana Wildlife retracted that proposal. The status quo won out over safety, again. Montana Governor Steve Bullock has recognized this risk. "On-going rancor regarding [Yellowstone] bison management can lead to indecision or a default to status quo or a 'no action' alternative, regardless of whether the current management is effective." Montana Decision Notice, Year-round Habitat for Yellowstone Bison EA 7 (Map) (Nov. 2015).

48. Montana Wildlife found that bullets from a rifle can travel between one and four miles. [Montana Wildlife] Recommendations for Subdivision Development, App'x C.3, http://fwp.mt.gov/fwpDoc.html?id=55372. It recognized that "occasional stray bullets can

threaten [residents'] safety or damage their homes." *Id.* In other words, residents and visitors near Beattie Gulch can die in their living rooms from any single hunter's mistake or failure of judgment.

49. Moreover, the Federal Agencies have created circumstances that drastically increase the chances of those mistakes or failures of judgment. That danger not only evicts Beattie Gulch residents from their homes, but also scares away visitors who would rent the cabins there.

50. The hunting causes other dangers. Hunters leave behind hundreds of gut piles that rot in the open, attracts wildlife (that may include grizzly bears and gray wolves), finds its way into trees and yards on private property (from raptors and ravens), and turns the entire local area into an open-air charnel house. The massive, bison "gut piles" could transmit *Brucella abortus* and pose a significant health threat to people, pets, livestock, and wildlife in the area.

51. For years, neighbors and residents, who live only a few hundred yards away from the bison-hunting, have objected at regular IBMP public meetings.

52. The IBMP has ignored and sidelined their legitimate concerns and done nothing to limit the hunt, as the hunting forces local residents to flee the area for months at a time, causes their businesses to lose money, and severely traumatizes them.

53. The government-sanctioned bison hunt has continued to expand as the Federal Agencies have released more bison from Yellowstone and allowed more hunters to participate in an already dangerous and poorly regulated hunt at Beattie Gulch. Rather than address this untenable situation, the Federal Agencies have foisted the dangerous and concentrated impacts of bison hunting in this tiny geographic area onto a small group of residents and neighbors.

**COUNT 1**

**Violation of the APA in implementing the Yellowstone Bison Management Act Amendments**

54. Neighbors hereby adopts by reference Paragraphs 1-53.

55. The Park Service and Superintendent Sholly have arbitrarily and capriciously implemented the Yellowstone Management Act Amendments.

56. The IBMP authorized hunters to shoot bison in Beattie Gulch mere yards from nearby residents, visitors, and businesses.

57. The Federal Agencies have created circumstances that drastically increase the chances of hunters, private property owners, neighbors, and visitors dying. That danger not only evicts the residents from their homes, but also scares away visitors who would otherwise rent cabins there. The Park Service has "entirely failed to consider an important aspect of the problem. . . ." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.* (*State Farm*), 463 U.S. 29, 43 (1983).

58. The Park Service misapprehends its legal authority and obligation to otherwise dispose of surplus Yellowstone bison, which includes bison outside Yellowstone who could potentially return. The Park Service cannot make a reasonable decision with its narrow interpretation of its own legal duties and authorities. "Courts must, of course, set aside [agency] decisions which rest on an erroneous legal foundation." *NRLB v. Brown*, 380 U.S. 278, 292 (1965) (quotations omitted); 5 U.S.C. § 706(2)(A).

59. The Park Service failed to analyze the impacts of the bison hunt before issuing the 2019 Winter Plan. It has thus violated the APA by arbitrarily and capriciously implementing the Act of June 30, 1924, Pub. L. No. 67-395, 42 Stat. 1174, 1214 (the Yellowstone Management Act Amendments).

**COUNT 2**

**Violation of the APA in implementing Forest Service Land Management Statutes**

60. Neighbors hereby adopts by reference Paragraphs 1-59.

61. The Forest Service has arbitrarily and capriciously implemented the Forest Service Organic Act of 1897, NFMA, the MUSY Act, and other land management statutes. 16 U.S.C. §§ 497, 528-531; 16 U.S.C. § 1604(e), 16 U.S.C. §§ 521a, 551, 55la, 553, 572, and 574.

62. The Forest Service has failed to protect the citizens who live near Beattie Gulch. The Forest Service has created circumstances that drastically increase the chances of hunters, private property owners, neighbors, and visitors dying. That danger not only evicts the property owners and residents from their homes in Beattie Gulch, but also scares away visitors who would otherwise rent cabins there. The Forest Service has "entirely failed to consider an important aspect of the problem . . . ." *State Farm*, 463 U.S. at 43.

63. The Forest Service never analyzed the impacts of the government-sanctioned bison hunt on private property owners, neighbors, and visitors before issuing the 2019 Winter Plan. It has thus violated the APA by arbitrarily and capriciously implementing the Forest Service Organic Act of 1897, NFMA, the MUSY Act, 16 U.S.C. §§ 521a, 528-531, 1604(e), and other statutes that include 551a, 553, 572, and 574.

**COUNT 3**

**Violation of NEPA's Requirement to Analyze Connected Actions**

64. Neighbors hereby adopts by reference Paragraphs 1-63.

65. Every action under the IBMP qualifies as a connected action under NEPA, so NEPA required the Federal Agencies to analyze those actions as parts of a major federal action.

66. The actions qualify as major federal actions because the Park Service has control over disposing of surplus bison. 16 U.S.C. § 36. The Forest Service has control because the bison hunt in Beattie Gulch takes place on its land.

67. The actions further qualify as major federal actions because the United States agencies are paying for 95 % of the bison management plan under the IBMP. Therefore, the Federal Agencies have actual control over bison management and "power to act on [the] information" NEPA would provide." *See Pub. Citizen*, 541 U.S. at 767-68.

68. NEPA requires the agencies to analyze the entire bison management plan and not to break it up into segments with insignificant impacts, or delegate parts of the analyses to Montana. Instead of analyzing all of the aspects of bison management, the Federal Agencies have deferred to Montana Wildlife to complete two EAs outside of NEPA. They based the 2019 Winter Plan, in part, on those analyses. The Federal Agencies have thus violated NEPA by acting without completing the environmental analysis of that action.

**COUNT 4**

**Violation of NEPA's Requirement to Issue a Supplemental EIS**

69. Neighbors hereby adopts by reference Paragraphs 1-68.

70. The Park Service and the Forest Service violated NEPA by failing to analyze the environmental effects of bison hunting on residents. They have never analyzed any alternative areas for bison hunting or any alternatives to bison hunting at Beattie Gulch.

71. The agencies have modified their action beyond the spectrum of alternatives they analyzed in the IBMP EIS. Because of the significant impacts of the bison hunt on hunters, neighbors, guests, and visitors to the Beattie Gulch area, NEPA required the Federal Agencies to

complete a supplemental environmental impact statement before acting. By failing to complete that analysis, they have violated NEPA.

**PRAYER FOR RELIEF**

72. Neighbors request the following relief:

a. Hold unlawful and set aside the 2019 Winter Plan, and any future operating procedures for the Plan.

b. Declare that the Park Service has violated the Yellowstone Management Act Amendments, 16 U.S.C. § 36, by arbitrarily and capriciously implementing it through the 2019 Winter Plan.

c. Declare that the Forest Service has violated the Forest Service Organic Act of 1897 and other statutory obligations by implementing the 2019 Winter Plan arbitrarily and capriciously.

d. Declare that the Park Service and the Forest Service violated NEPA by arbitrarily and capriciously failing to analyze the impacts of bison hunting on private residents in Beattie Gulch.

e. Declare the Park Service and the Forest Service violated NEPA by failing to analyze all of the IBMP's impacts, and instead leaving to non-federal actors to analyze aspects of major federal actions.

f. Permanently enjoin the Park Service and the Forest Service from authorizing bison hunting on federal land in Beattie Gulch and within one mile of the private residences there.

g. Award attorney fees and costs in favor of Neighbors Against Bison Slaughter and Ms. Lynn.

h. Any other and further relief as the Court concludes necessary or appropriate.

Dated October 21, 2019,

MATTHEW D. THURLOW, D.C. Bar No. 1008014
Baker & Hostetler LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 861-1681
mthurlow@bakerlaw.com

*/s/ Jared S. Pettinato*
JARED S. PETTINATO, DC Bar No. 496901
Jared Pettinato Law Offices
3416 13th St. NW, # 1
Washington, DC 20010
(406) 314-3247
Jared@JaredPettinato.com
*Attorneys for Plaintiffs*